(26 Misc. Rep. 224.)

### HOLTZ v. DIEHL et al.

(Supreme Court, Special Term, Erie County. February, 1899.)

1. PARK COMMISSIONERS—DISCRETION—REVIEW BY COURTS.

The exercise by the park commissioners of Buffalo of "the full and exclusive power" given by Laws 1891, p. 204, § 310, in laying out a park, is not reviewable by the courts, where the commissioners do not transcend their powers to the extent of perpetrating a fraud.

2. SAME.

Under Laws 1891, p. 204, § 310, giving the park commissioners of Buffalo power to control and lay out parks, they may construct a speedway in a parkway.

3. SAME—RIGHT OF TAXPAYERS.

Code Civ. Proc. § 1925, authorizing a taxpayer to bring action to prevent waste to city property, does not authorize a suit by him to enjoin park commissioners from constructing a speedway in a parkway, on the ground that it would injure his private property fronting on the parkway.

4. SAME—APPLICATION OF FUNDS.

The section does not authorize a suit by him to prevent the park commissioners from using city funds for a different purpose than that for which they were appropriated by the council, where they are not needed for the latter purpose.

5. SAME.

Laws 1891, p. 205, § 315, requiring the council of Buffalo to grant to the park commissioners such sums as may be required for the improvement of parks and the repair of improvements therein, and prohibiting the commissioners from applying moneys granted for improving park approaches for any other purpose, does not preclude the commissioners from using money granted to repair roads for the construction of a speedway.

6. SAME—VACATION OF STREETS.

Laws 1891, p. 204, § 310, authorizing the park commissioners of Buffalo to control and lay out parks, does not enable them to close any part of any regularly laid out street by resolution, nor in any other manner than that provided in the charter.

Injunction by Henry H. Holtz against Conrad Diehl and others, park commissioners of the city of Buffalo, to restrain defendants from constructing a proposed speedway. Injunction granted, and defendants move to vacate it. Vacated in part.

Haller & Hancock (Martin Carey, of counsel), for plaintiff.

William H. Cuddeback (John G. Milburn, of counsel), for defendants.

CHILDS, J. The defendants are members of, and collectively compose, the board of park commissioners of the city of Buffalo, and, as such board, on or about the 1st day of November, 1898, adopted the report of a committee of said board recommending that a "speedway be constructed on Humboldt Parkway, between Kensington and Delavan avenues, as per plans submitted, work to be commenced as soon as funds are available"; the plan referred to being the same as outlined in the map attached to the answer of the defendants in this action. Thereafter, and at a special meeting of said board held on the 26th day of November, 1898, the following resolution was adopted:

"That the committee on grounds and roads be, and hereby is, empowered to cause the construction of a speedway in Humboldt Parkway, commonly

called a 'speedway,' according to plans heretofore adopted, by contract or otherwise, as it may deem best, as soon as the funds for this purpose are available."

And, on the 6th day of December, adopted the following preamble and resolution:

"Whereas, this board, at its regular meeting on November 1, 1898, voted unanimously to construct a speedway for the fast driving of horses, commonly called a 'speedway,' in Humboldt Parkway, between Kensington and Delavan avenues; and whereas, there is more than sufficient money now remaining in the appropriation for roads and walks to do such of the constructing of such roadway as is necessary at present: Therefore, be it resolved, that the committee on grounds and roads be, and hereby is, authorized and empowered to commence the construction of such roadway at once; to cause to be removed by contract or otherwise, as it may deem best, the two center rows of trees, and place them where needed in the park system; and to prepare for this winter's use as much of the center grass plot between the avenues mentioned as is necessary."

And on the 12th day of December, 1898, adopted the following resolution:

"That, in locating the speedway in Humboldt Parkway, the committee on grounds and roads are hereby directed to so arrange the roadway and the width of the same as to allow the bicycle paths to remain between the two outer rows of trees, as at present."

And on the 12th day of December, 1898, passed the following resolution:

"That the committee authorized to prepare the rules and regulations to govern the speedway be instructed to embody an ordinance providing against the use of the speedway on Sunday."

After the adoption of these resolutions, the plaintiff commenced this action, under section 1925 of the Code of Civil Procedure, known as a "Taxpayer's Action," for the purpose of restraining said board of park commissioners from constructing said speedway, that being the sum of the relief asked in the complaint. It therefore becomes necessary in disposing of this motion to consider whether the plaintiff has stated in his complaint a cause of action under the provisions of the statute referred to.

In the first paragraph of the complaint, after the formal allegations of the plaintiff's character as a taxpayer, within the meaning of the statute referred to, it is alleged that said plaintiff "is the owner in fee-simple of real property located on Humboldt Parkway, hereinafter mentioned and described, plaintiff's said real property fronting on that part of said parkway in which the changes and work hereinbefore mentioned are to be made, and resides thereon."

In the second paragraph:

"That Humboldt Parkway is one of the parkways of the park approaches of the city of Buffalo, regularly laid out and dedicated, and connecting the parks of the city of Buffalo."

In the third paragraph:

"That Oak Grove avenue and Loring avenue are both regularly dedicated and accepted streets of said city of Buffalo, intersecting and crossing the said Humboldt Parkway between Kensington and Delavan avenues."

In the fourth paragraph:

"That Humboldt Parkway consists mainly of green sward, eighty-six feet in width, extending through the length of said parkway, upon which green

sward there are planted and maintained by said city of Buffalo numerous trees and shrubbery; that the grading, laying out, and maintaining of the said green sward between the said Kensington and Delavan avenues, the planting of said trees and shrubbery, has cost the city of Buffalo, and has been reasonably worth, as plaintiff is informed and believes, a sum of money equal to the sum of $40,000 and upward."

In the fifth paragraph, the passage of the resolution before referred to is alleged.

In the sixth paragraph, the proposed manner of constructing such speedway is alleged, and, further, "that said plans further provide for the closing of the said Oak Grove avenue and the said Loring avenue."

In the seventh paragraph, that said park commissioners, on the 1st day of November, 1898—

"By a resolution, decided that the said Oak Grove avenue and the said Loring avenue be closed between the driveways and either side of said Humboldt Parkway; that without the application or consent of the property owners, as aforesaid, the defendants threaten and are about to close Oak Grove avenue and Loring avenue, as aforesaid, contrary to titles 11 and 18 of chapter 105 of the Laws of 1891, and the several acts amendatory thereof, as aforesaid."

In the eighth paragraph:

"That the defendants have threatened to, and are about to, commence work upon said Humboldt Parkway, in the construction of said speedway, and that the same is not to constitute any driveway or any portion of a driveway in connection with said parkway or the said park system of the city of Buffalo."

In the ninth paragraph:

"That the said threatened acts of the defendants, in taking and making such race course or speedway in said parkway, and using said parkway for such purpose, will impair the value of plaintiff's property, incommode and interfere with the plaintiff in the use and disposition of his property, as aforesaid, and in the use of the lateral approaches of said parkway as a means of ingress and egress, and will render said lateral approaches and driveways detrimental to public travel, and will bring in front of plaintiff's premises, on all days of the week, large crowds of undesirable people, interfering with the plaintiff's peace and quiet, and effectually destroy the use of said parkway as a street, or an approach to said parks in the city of Buffalo."

In the tenth paragraph:

"That the defendants have never reported to the comptroller of the city of Buffalo, or to the common council, any estimates, specifying moneys required for the said purpose of constructing such a race course or speedway as herein alleged."

In the eleventh paragraph:

"That the work contemplated will cost a sum of money in excess of $500, and that the defendants have never advertised or called for bids for the construction of such race course or speedway as provided by the charter of Buffalo,"

—But threatened to and are about to use for the construction of such race course and speedway moneys of the city of Buffalo regularly appropriated for the purpose of repairing roads and walks already existing in the parks of the city of Buffalo.

In the twelfth paragraph:

"That the sum of money in the said fund, at the disposal of the defendants, for the repair of existing roads and walks, does not exceed the sum of $2,800,

and is insufficient to construct said speedway or race course according to the intention, plans, and resolutions of the defendants."

In the thirteenth paragraph, that the defendants—

"Threaten and are about to tear up, regrade, repair, and construct portions of said lateral driveways at present existing on either side of the green sward in said Humboldt Parkway, and also a portion of said Kensington avenue."

, In the fourteenth paragraph, that the defendants have not published any notice of their intention to do any of said work or to order the same to be done or give any interested person an opportunity to be heard concerning any of the acts so threatened and about to be done by the defendants, as required by the provisions of chapter 105 of the Laws of 1891, aforesaid; that the said acts, threatened .and about to be done by the defendants in removing the trees, lawn, and green sward from the said Humboldt Parkway, and the regrading of said parkway and the closing of said streets now crossing said ,parkway, will be a waste of the estate, funds, and property of the ·city of Buffalo, and, as plaintiff is informed and believes, will subject the city of Buffalo to large claims for damages to the owners of property in the vicinity of said threatened work of the defendants, and will cause to the plaintiff and his property constant, continuing, and irreparable damage. Following this paragraph is the prayer that the defendants be enjoined and restrained from doing any of the acts referred to in the complaint.

The answer of the defendants either admits or puts in issue each material allegation in the complaint; among other things, admitting that it is the purpose of the defendants to construct the speedway .according to the plan referred to in the resolution quoted, a copy of which plan is annexed to said answer, and for that purpose to appropriate the moneys under the control of said board, and in the fund for the repair of roads and walks referred to in the complaint and affidavits. Many of the allegations in the complaint and affidavits may be disposed of in a group, as being wholly immaterial to the cause of action attempted to be pleaded and relied upon by the plaintiff.

By section 310 of the revised charter of the city of Buffalo, it is provided that the board of park commissioners—

"Shall have the full and exclusive power to make rules and by-laws for the orderly transaction of their business; to govern, manage and direct, and to lay out and regulate the parks and approaches thereto; * * * in regard to said parks and the approaches thereto they shall possess all the power and authority now by law conferred upon or possessed by the common council in respect to the public streets, sidewalks, squares and places in said city. * * * The said approaches shall, within the intent and meaning of this act, be deemed to include all lands within the boundaries thereof, together with all rights and easements appurtenant thereto, and such portions thereof as may be within the boundaries of intersecting city streets." Laws 1891, ·p. 204.

It will be observed that, under the provisions of the statute quoted, the board of park commissioners is given exclusive control of the .parks of the city, and vested with an absolute discretion to improve .and maintain such parks as, in its judgment, shall seem proper; and ·in that respect the discharge of its duty is not subject to the con-

trol of any other city department, nor of the courts, and, so long as said board performs its duty in the line of maintaining the parks of the city, its judgment is not open to question or revision.    It is only when a board, charged with such duties and vested with such discretion, transcends its power to the extent of perpetrating a fraud that courts will interfere and give direction to its acts; and this must be the rule, of necessity.    The rule contended for by the plaintiff would practically put an end to all park improvements; for, if the discretion of the board of park commissioners was subject to review by the courts at the suggestion of any taxpayer not agreeing with the plan of improvement adopted by the board, it would be as well to go to the courts in the first instance, without imposing upon the board the labor of making plans.

The construction of a speedway by the board, now sought to be enjoined, seems to be a subject very clearly within the power and discretion of the board of park commissioners, and to be for a strictly park purpose, and wholly upon park lands; lands over which no person save the board has any jurisdiction or the right to direct an improvement or nonimprovement.    It is in line with the construction of a bicycle path, with the construction of a footpath, a path or road for people who wish to ride on horseback, and a road for those who choose to ride in carriages.    No one of these improvements is occupied by the whole of the people of Buffalo, or of those who enjoy the parks, but by classes, the sum of which make up the whole, and the character of the work is not changed by designating it a race track.    Tested by the statute referred to, and these observations, it will be seen that all of the allegations of the complaint referring to the plaintiff's ownership of property adjacent to the parkway, to the character of the land proposed to be devoted to the speedway, the growth thereon, the cost of its improvement, the manner of constructing the speedway and the use thereof, after completion, and the effect thereof upon the property of the plaintiff, are all immaterial issues, and, assuming the truth of the allegations in the complaint in that behalf to be true, furnish no support for the injunction granted in this action.    The purpose of this action is to prevent waste or injury to the estate, funds, or other property of the city, and not to redress a private grievance or to prevent an act, the only effect of which would be to injure the individual property of the plaintiff in the action.    Such injury to the property of the city must be occasioned by some act of the board or officer outside of the duty or discretion vested in him or it, and so flagrant in its character as to amount to a fraud upon the taxpayers.    Ziegler v. Chapin, 126 N. Y. 348, 27 N. E. 471; Adamson v. Railroad Co., 89 Hun, 261, 34 N. Y. Supp. 1073; Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263; Rogers v. O'Brien, 153 N. Y. 357, 47 N. E. 456.

In this view of the case, but two questions remain to be considered:  First, whether the purpose of the board, under the resolution adopted by it and quoted, is to illegally divert funds under its control to the use of constructing the speedway; and, second, whether the board, under such resolution, purposes to illegally discontinue parts of two streets intersecting and crossing the parkway.   In the

resolution referred to, the fund for the repair of roads and walks is inferentially devoted to the work of constructing the speedway. In the answer it is admitted that it is the purpose of the board to so apply and use said fund. It is claimed by the plaintiff that, this fund having been provided by the common council upon an estimate specified to be for the repair of roads and walks, the board of park commissioners have no authority to apply any part of it to any other use than that specified in such estimate. Section 315 of title 11 of the charter of the city of Buffalo provides:

"The common council shall every year grant to the said park commissioners such sum of money as they shall require and as to the said common council shall appear reasonable and just, for the government, improvement, paving and maintenance of said parks and approaches, and for keeping in repair the improvements and structures therein, and for furnishing a suitable office for said commissioners. * * * The said commissioners shall furnish annually an estimate of what sum of money they will require for the government, maintenance and improvement of said park, parks and approaches, specifying the particular improvements which are proposed to be made to any park approach, and the said council in making its annual grant to said commissioners shall specify each item and the amount of each item of such estimate granted for improving any of such approaches, as well as the total amount. Said commissioners shall not apply the moneys so granted for any particular improvement on any park approach to any other purpose." Laws 1891, p. 205.

The scheme provided by the provisions of the statute quoted contemplates the raising of necessary funds for park purposes upon estimates made by the board of park commissioners, such estimates furnishing a basis for the total amount required, and are necessarily approximate in their character. The statute contains no limitation upon the authority of the board of park commissioners in the expenditure of any part of the aggregate fund placed in its hands for any legitimate park purpose except that part of said fund raised "for any particular improvement on any park approach." And, as to such part of the fund the statute declares, "the commissioners shall not apply the same to any other purpose." This construction was entertained by the Honorable Frank C. Laughlin, then corporation counsel, on the 25th day of September, 1895, in an opinion delivered by him to said board of park commissioners. Minutes No. 94, Proceedings Board of Park Commissioners, August 2, 1898, p. 435. The fund now in the hands of the board which it is proposed to appropriate to the construction of the speedway, under the complaint in this action, and the affidavits read on this motion, may be regarded as in excess of the amount needed for the repair of roads and walks during the current year, and may therefore be lawfully devoted to the proposed use. Kip v. City of Buffalo (Super. Buff.) 7 N. Y. Supp. 685, afterwards affirmed in the court of appeals.

These views would seem to dispose of the question as to the alleged illegal diversion of funds, but do not foreclose the argument in support of the action of the commissioners in so far as that may be questioned in this action. A public officer may incur a liability to the municipality in whose service he is, for an act which would not permit a taxpayer to maintain an action; and, without discussing how far the city might interfere to prevent a city officer from de-

voting moneys in one fund to the purposes of another, it is not believed that a taxpayer, under the statute referred to, could maintain an action for that purpose, the diverted fund being faithfully applied to a city or municipal purpose within the general charge or control of such officer. Such an application creates no waste or injury to the city. The fund is used to pay for an improvement which, were it not so applied, must necessarily be paid for from some other fund. The argument that the work could not be carried on without a specific appropriation, and might not therefore be performed were the rule contended for by the plaintiff enforced, has not been overlooked. But, upon consideration of all the suggestions in that behalf, the conclusion has been reached that the proposed application of the fund raised for the repair of roads and walks to the construction of the speedway is not illegal, and is not such an act of waste or injury to property as will permit the plaintiff to maintain this action. Cases above cited.

The remaining question as to the closing of city streets has been left in the pleadings and affidavits in a condition too uncertain to enable the court to determine whether it is the purpose of the park commissioners to close any part of a street regularly laid out and used as one of the streets of the city of Buffalo. The board of park commissioners has no authority to close any portion of any regularly laid and open city street, by resolution, nor in any other manner than that provided in the charter; and, while it may be doubted whether this action can be maintained for the purpose of restraining such action on the part of the board, it is deemed advisable that so much of the injunction as restrains the board from closing that part of the streets referred to in the papers should stand.

The other questions raised by the plaintiff in his brief have all been examined, and the conclusion reached that the views herein stated dispose of all the questions which might properly be considered in disposing of this motion.

For the reason stated, an order may be entered vacating the injunction granted in this action, saving and excepting that provision thereof restraining the board of park commissioners from closing the streets named in the complaint in any other manner than that provided in the charter of the city of Buffalo. Ordered accordingly.